IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FAREEDA YASMEEN,<br><br>   Plaintiff,<br><br><br><br>vs.<br><br><br><br>HOSPIRA, INCOPRORATED, an Illinios Corporation; MAREEN NEWMAN, an individual; and MICHELLE CHICOLA, an individual;<br><br>   Defendants. | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br><br><br>Case No. 2:06-CV-00507 PGC |

      This case involves allegations arising under the Family Medical Leave Act of 1993 (FMLA) and Title VII of the Civil Rights Act of 1964.  Ms. Fareeda Yasmeen, the plaintiff, claims that she was terminated in violation of her FMLA rights, in retaliation for taking FMLA leave, and because of her religion.  She also alleges that defendant Hospira intentionally inflicted emotional distress on her.  Hospira has filed a motion for summary judgment on all claims, arguing that Ms. Yasmeen was terminated for allegedly falsifying the FMLA medical certification form.  Ms. Yasmeen has also filed a motion for summary judgment based on her FMLA interference claim.

After carefully reviewing the parties' motions and accompanying memoranda, the court finds as follows: (1) Ms. Yasmeen's interference claim fails because a reasonable jury could not find that she would not have been terminated regardless of her request for, or taking of, FMLA leave; (2) Ms. Yasmeen's retaliation claim fails because she has not met her burden of proving that Hospira's reason for dismissing her was a pretext in retaliation for her taking FMLA leave; (3) Ms. Yasmeen has failed to meet her burden of proving that Hospira's reason for terminating her was a pretext for racial discrimination; and (4) Ms. Yasmeen has not established a cause of action for intentional infliction of emotional distress, which claim is also barred by the Utah Worker's Compensation Act.

The court, therefore, grants defendants' motion for summary judgment [#30] and denies Ms. Yasmeen's cross motion for summary judgment [#32]. Additionally, the court dismisses Ms. Yasmeen's claims for interference and retaliation against the individually named defendants.

## BACKGROUND

When considering a motion for summary judgment, the court views the evidence, and draws all inferences therefrom, in the light most favorable to the nonmoving party.[1] The court will consider Ms. Yasmeen as the nonmoving party for purposes of this motion, and will therefore view the facts in her favor.

Ms. Yasmeen was hired by Hospira's predecessor, Abbot Laboratories, on May 31, 1993. Hospira manufactures medical devices for hospitals, and Ms. Yasmeen worked as a Manufacturing Quality Insurance Inspector who ensured that the sample products complied with manufacturing and labeling standards.

---

[1] *Green v. New Mexico*, 420 F.3d 1189, 1192 (10th Cir. 2005).

As a practicing Muslim from India, Ms. Yasmeen prays several times a day. While employed at Hospira, she was allowed to pray during the workday. For at least part of her employment, she was allowed to pray in a closet; when the closet was locked, Ms. Yasmeen found other places to pray. After September 11, 2001, Ms. Yasmeen claims that she was treated more harshly than her co-workers. Specifically, she alleges her supervisor demanded that she work overtime and on Saturdays. Ms. Yasmeen reserved Saturdays for religious practices and did not work on those days. Ms. Yasmeen also claims she was criticized in her 2003 and 2004 evaluations for failing to work overtime.

In June 2004, Ms. Yasmeen requested FMLA leave from Hospira to care for her husband during his recovery from hernia surgery. FMLA requires that the employee have a health provider complete and sign the FMLA medical certification. Ms. Yasmeen's husband's doctor, Dr. Daniel Vargo, completed and signed the form. Instead of listing a single date as the conclusion date of the FMLA leave, however, Dr. Vargo listed two separate ending dates — June 24, 2004 or June 28, 2004.[2] In her deposition, Ms. Yasmeen stated that she was confused by the dates and tried to get Dr. Vargo to correct the inconsistencies. Since he was unavailable, though, Ms. Yasmeen attests that she had Dr. Vargo's resident, Dr. Stroup, make the changes. The dates were changed to July 10, 2004. Ms. Yasmeen turned in the revised form to Hospira on June 8, 2004, and started her FMLA leave that day.

On June 17, 2004, Ms. Maureen Newman, the Occupational Health Nurse in charge of processing FMLA requests, called Dr. Vargo regarding the date changes on the form. Dr. Vargo

---

[2] The questions and answers were as follows: "During what period do you anticipate such treatments will be needed?" Dr. Vargo listed 6/28/04; "State the date or dates . . . of such incapacity." Dr. Vargo listed 6/24/04; and "Please indicate the dates and times that the employee was or will be needed to provide care of [sic] assistance." Dr. Vargo listed 6/24/04. Am. Compl. Ex. 3 (Docket No. 14).

informed Ms. Newman that he intended Ms. Yasmeen to have leave until June 28, 2004. Hospira granted Ms. Yasmeen leave until that date. Ms. Newman, however, was concerned that Ms. Yasmeen had falsified the dates on the form. As part of her inquiry, Ms. Newman contacted Dr. Stroup's and Dr. Vargo's office manager and obtained letters stating that neither doctor had made the date changes on Ms. Yasmeen's certification form. When Ms. Yasmeen returned to work on June 21, 2004, Ms. Newman and Michelle Chicola, the Director of Human Resources, asked Ms. Yasmeen about the changes on the form. Ms. Yasmeen replied that the doctor had made the changes. Ms. Chicola responded that Dr. Vargo and Dr. Stroup denied making the changes. Ms. Chicola gave Ms. Yasmeen twenty-four hours to obtain exonerating evidence that she did not falsify the forms herself. Ms. Yasmeen was also put on paid suspension.

That same day, Ms. Yasmeen approached Dr. Stroup, and he told her that he did not remember making the changes on the form. Although Ms. Yasmeen obtained a letter from Gail Bullock, Coordinator of the Hospital's Risk Management Department, stating that it was possible that one of the doctors at the hospital had made the changes, the letter did not identify anyone in particular. Ms. Chicola did not accept the form as exonerating evidence, and Ms. Yasmeen was unable to provide further evidence in the next week.[3]

Over the same period, Ms. Chicola conducted an investigation into Ms. Yasmeen's employment. As a matter of course, she spoke with Ms. Yasmeen's supervisor, Mr. Travis Hunter. On June 24, 2004, Mr. Hunter drafted a document summarizing various issues with Ms.

---

[3] Hospira ultimately terminated Ms. Yasmeen because it had an honest belief that the certification form was falsified, not because they had proof that Ms. Yasmeen did, in fact, falsify the form. *See Medley v. Polk Co.*, 260 F.3d 1202, 1208 (10th Cir. 2001) (stating that an employer who discharges an employee with an honest belief that the employee is not using FMLA for its intended purpose does not violate FMLA, even if mistaken). Therefore, the question of who altered the dates on the form does not create a genuine issue of material fact.

Yasmeen's employment. The first part of the form, entitled "Personal practice of religion/Prayer schedule," stated that Ms. Yasmeen's "prayer schedule has not been consistent over the past four (4) years. In the beginning the schedule was set around her breaks and adjusted only when rotating into new assignments. It now appears the schedule is based on convenience."[4] The form also stated that, during the four years, manufacturing complained that she was not at her workstation when needed but was praying, and that Ms. Yasmeen "has been counseled as to the affect of communication to her leaving so other inspectors may provide coverage." During Ms. Yasmeen's suspension, Hospira also generated a schedule which graphically depicted her time off, including that for her FMLA leave.

On July 28, 2004, Hopspira discharged Ms. Yasmeen for allegedly falsifying the FMLA form. Ms. Yasmeen filed a charge of discrimination and then filed her complaint in this case. After receiving a right-to-sue letter from the Utah Antidiscrimination and Labor Division, Ms. Yasmeen timely amended her complaint, stating that she exhausted her administrative remedies under Title VII and could therefore include Hospira's alleged violation of Title VII as a claim in addition to her other claims.

For the reasons discussed below, the court grants Hospira's motion for summary judgment on all four of Ms. Yasmeen's claims: (1) interference with her FMLA leave; (2) retaliation for her taking FMLA leave; (3) discrimination under Title VII; and (4) intentional infliction of emotional distress.

---

[4] Mem. Opp'n Defs.' Mot. Summ. J. Ex. "E" (Docket No. 36-5).

**DISCUSSION**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." [5]

1.  *Interference*

Under 29 U.S.C. § 2615(a)(1) of the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."[6] To prevail on an interference claim, Ms. Yasmeen must demonstrate: "'(1) that [she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave [or reinstatement]; and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights.'"[7] Once Ms. Yasmeen establishes her prima facie case for interference, the burden shifts to Hospira to prove that Ms. Yasmeen "would have been dismissed regardless of [her] request for, or taking of, FMLA leave." [8]

Here, Hospira stipulated that Ms. Yasmeen was entitled to FMLA leave to help care for her husband following his surgery, thereby establishing the first element of her prima facie case. As for the second element, "a deprivation [of reinstatement] is a violation regardless of the

---

[5] Fed. R. Civ. P. 56(c).

[6] 29 U.S.C. § 2615(a)(1).

[7] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (citation omitted).

[8] *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 963 (10th Cir. 2002).

employer's intent."[9]  Accordingly, by terminating Ms. Yasmeen's employment, Hospira interfered with Ms. Yasmeen's FMLA leave by denying her the right to be reinstated to her former position or an equivalent one upon her return to full-time work.[10]

Hospira contends that, since Ms. Yasmeen "returned to her position on June 21, 2004, was then put on paid suspension pending investigation, and was discharged a week later," Hospira did not interfere with Ms. Yasmeen's right to reinstatement.[11]  However, to allow an employer to avoid interference claims by reinstating its employee, immediately putting her on paid suspension, and shortly thereafter terminating her employment is contrary to the purpose behind the interference theory, and this court will not deny the claim on such a technicality.  In short, Hospira failed to restore Ms. Yasmeen to her previous position; therefore, she has established the second element of her prima facie case for interference.

Ms. Yasmeen has likewise established the third element because her termination "was related to the exercise of [her] FMLA rights."[12]  According to *Smith v. Diffee Ford-Lincoln-Mercury, Incorporated*, "[a] plaintiff can prevail under an entitlement theory if she was denied her substantive rights under the FMLA for a reason connected with her FMLA leave."[13]  And

---

[9] *Id*. at 960 (citation omitted).

[10] 29 U.S.C. § 2614(a)(1).

[11] Reply Supp. Defs.' Mot. for Summ. J. 1 (Docket No. 42).

[12] *Metzler*, 464 F.3d at 1180.

[13] 298 F.3d at 961 ("On the other hand, a reason for dismissal insufficiently related to FMLA leave will not support recovery under an interference theory. . . . We considered the indirect causal link between the employee's dismissal and FMLA leave (i.e., the fact that they independently resulted from the same cause) to be inadequate as a basis for recovery under the FMLA." (citing *McBride v. CITGO Petroleum Corp*., 281 F.3d 1099, 1108 (10th Cir. 2002)).

here, a reasonable jury could determine that Ms. Yasmeen's termination for allegedly falsifying her FMLA medical certification form was connected with her FMLA leave.  Therefore, the court finds that Ms. Yasmeen has made out a prima facie case of interference.

Even so, the court further determines that Ms. Yasmeen's interference claim ultimately fails because Hospira can prove that Ms. Yasmeen would have been dismissed regardless of her FMLA leave.  The FMLA is not a strict liability statute.[14]  According to the FMLA, "[a]n employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment."[15]  Basically, Hospira did not interfere with Ms. Yasmeen's FMLA rights "if dismissal would have occurred regardless of the request for or taking of FMLA leave."[16]  Other jurisdictions have clarified that "FMLA does not shield an employee from termination simply because the alleged misconduct concerns use of FMLA leave."[17]  Although the misconduct in that case concerned the employee's misuse of the leave, the principle is the same: the FMLA will not shield an employee from termination for allegedly falsifying an FMLA form.  As Ms. Chicola states in her deposition, "[a]t the point she submitted [the falsified medical certification form] you now have what appears to be a dishonest employee.  Whether she comes back early or not, the dishonesty

---

[14] *Metzler*, 464 F.3d at 1180.

[15] 29 C.F.R. § 825.216(a).

[16] *Diffee*, 298 F.3d at 961 (10th Cir. 2002).

[17] *Kitts v. Gen. Telephone North*, No. 2:04-CV-173, 2005 WL 2277438, at *11 (S.D. Ohio Sept. 19, 2005).

is still there."[18]  It was therefore the apparent falsification of the form — not Ms. Yasmeen's FMLA request — that resulted in her dismissal.

Ms. Yasmeen contends that it is "impossible" for Hospira to meet its burden because it terminated Ms. Yasmeen for allegedly falsifying her FMLA certification form, and therefore Hospira cannot prove that her dismissal would have occurred regardless of Ms. Yasmeen's request for FMLA leave since the form was part of her request.[19]  However, as mentioned above, this argument misses the point.  As Hospira points out, to adopt a rule under the FMLA that employees are protected from discharge for apparently forging company documents would result in employees defrauding their employer with impunity so long as the falsified document was an FMLA document.[20]  Such a result is contrary to common sense.

Ms. Yasmeen also argues that in such cases where an employer needs to verify the validity of the certification form, including "an estimate of the time that such employee is needed to care for the . . . spouse,"[21] the FMLA has set out specific steps for employers to follow.  In such situations, an employer "may require, at the expense of the employer, that the eligible employee obtain the opinion of a second health care provider designated or approved by the employer concerning any information certified . . . ."[22]  However, by its plain language, the

---

[18] Chicola Dep. pp. 71-72, Mar. 30, 2007.

[19] Mem. Opp'n Defs.' Mot. Summ. J. 14 (Docket No. 36).

[20] *See, e.g.*, *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877-78 (10th Cir. 2004) ("[Plaintiff's] request for FMLA leave does not shelter her from the obligation, which is the same as that for any other Honeywell employee, to comply with Honeywell's employment policies, including its absence policy.").

[21] 29 U.S.C. § 2613(b)(4)(A).

[22] 29 U.S.C. § 2613.

provision is permissive,[23] and therefore Hospira was not required to allow Ms. Yasmeen a second opinion at its expense. Instead, Hospira gave Ms. Yasmeen twenty-four hours to prove that she did not falsify the form (not a violation of FMLA) and did not terminate her employment until a week later.

Ms. Yasmeen also claims that Hospira interfered with her FMLA leave because Ms. Newman contacted Ms. Yasmeen's husband's doctor in violation a FMLA provision limiting contact with an employee's health care providers.[24] Despite Hospira's apparent violation of this FMLA provision, however, Ms. Yasmeen still fails on her interference claim. A violation of the no-contact provision does not defeat Hospira's established defense; Hospira is still able to meet its burden by establishing that Ms. Yasmeen would have been discharged regardless of her request for, or taking of, FMLA leave.

Lastly, Ms. Yasmeen contends that the schedule that Hospira generated showing the time Ms. Yasmeen took off since the year 2000, including her FMLA leave, shows that she was actually terminated because she took FMLA leave. However, this schedule was created as part of a Ms. Chicola's routine investigation pending termination and does not show that this information was used to justify termination, especially since the schedule was generated as a routine matter *after* Ms. Yasmeen was put on paid suspension for allegedly falsifying the

---

[23] *See Stekloff v. St. John's Mercy Health Sys.*, 218 F.3d 858, 860 (8th Cir. 2000) ("The language of § 2613(c)(1), however, is merely permissive: It states that an employer with 'reason to doubt the validity' of the employee's certification 'may' require the employee to obtain the opinion of a second health care provider.").

[24] 29 C.F.R. § 825.307(a) reads: "If an employee submits a complete certification signed by the health care provider, the employer may not request additional information from the employee's health care provider. However, a health care provider representing the employer may contact the employee's health care provider, with the employee's permission, for purposes of clarification and authenticity of the medical certification."

certification form. Furthermore, Ms. Yasmeen already established her prima facie interference claim and Hospira met its burden by showing that Ms. Yasmeen would have been discharged regardless of her request for, or taking of, FMLA leave. Therefore, as with Ms. Yasmeen's other arguments, such a claim does not refute Hospira's defense.[25] Becuase this court is granting Hospira's motion to summary judgment on Ms. Yasmeen's interference claim, the court dismisses Ms. Yasmeen's complaint against the individually named defendants, Ms. Newman and Ms. Chicola, on the interference claim as well.

    2.  *Retaliation*

Unlike the interference theory, the retaliation theory of the FMLA is subject to the burden-shifting analysis under the *McDonnell-Douglas* framework.[26] Under this analysis, Ms. Yasmeen must first establish a prima facie case of retaliation.[27] To state a prima facie case of retaliation, Ms. Yasmeen must show that "(1) she engaged in a protected activity; (2) [Hospira] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action."[28] Once Ms. Yasmeen establishes her prima facie case, the burden then shifts to Hospira to "offer a

---

[25] As Ms. Yasmeen acknowledges, the FMLA interference theory is not subject to the McDonnell-Douglas burden-shifting analysis like the retaliation theory. Therefore, although her contentions have merit, she has already established her prima facie case for interference. The burden then shifts to Hospira to prove that it would have terminated Ms. Yasmeen despite her FMLA leave, and Hospira has met its burden. Ms. Yasmeen's contentions cannot then be used to show that the reason Hospira gave to justify her termination is pretextual.

[26] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

[27] *Id*. (citation omitted).

[28] *Id*. at 1171 (citation omitted).

legitimate, non-retaliatory reason for the employment action."[29]  The burden then shifts back to Ms. Yasmeen to demonstrate that the "proffered reason is pretextual."[30]

In this case, Ms. Yasmeen has established her prima facie case for retaliation.  Hospira stipulated that Ms. Yasmeen was entitled to FMLA leave to help care for her husband following his surgery, thereby establishing the first element of her prima facie case.  Hospira also stipulated that in terminating Ms. Yasmeen, it "took an action that a reasonable employee would have found materially adverse,"[31] thereby establishing the second element of her prima facie case for retaliation.

Additionally, Hospira acknowledges that temporal proximity is sufficient to infer a causal relationship between the adverse employment action and protected activity, thereby establishing the third element of a prima facie case of retaliation under the FMLA.[32]  Here, Ms. Yasmeen returned to work on June 21, 2004, and was terminated on June 28, 2004.  Because her termination was, therefore, very closely connected in time to protected FMLA activity, this court finds that Ms. Yasmeen has established the third and final element of her prima facie case. [33]

---

[29] *Id*. at 1170 (citation omitted).

[30] *Id*. (citation omitted).

[31] *Id*. at 1171.

[32] Reply Supp. Defs.' Mot. Summ. J. 2 (Docket No. 42) (citing *Metzler*, 464 F.3d at 1180).

[33] *See Metlzer*, 464 F.3d at 1172 (finding temporal proximity sufficient to establish causal connection where employee was terminated within four weeks of her request for FMLA-protected leave).

At this point, Hospira bears the burden of "offer[ing] a legitimate, non-retaliatory reason" for terminating Ms. Yasmeen.[34] Hospira has met is burden. Specifically, Hospira argues that it discharged Ms. Yasmeen because it believed she submitted a falsified FMLA medical certification form.

Ms. Yasmeen must then present evidence that this proffered reason is pretextual. Ms. Yasmeen's retaliation claim ultimately fails because she lacks sufficient evidence suggesting pretext. Ms. Yasmeen "'must present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive.'"[35] She has not done so here. Ms. Yasmeen claims that the schedule generated as part of the routine investigation that occurred during her paid suspension proves that Hospira terminated her in retaliation for her use of FMLA leave. As discussed earlier, however, the schedule showed all of the leave that Ms. Yasmeen had taken since 2000 for *any* reason, not just her FMLA leave. Also, there was nothing on the schedule from reach a reasonable jury could infer that Ms. Yasmeen was indeed terminated in retaliation for taking FMLA leave.[36] To the contrary, all the evidence suggests that this was routinely prepared as an administrative matter.

---

[34] *Id*. at 1170.

[35] *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1290-91 (10th Cir. 2007) (citation omitted).

[36] Ms. Yasmeen also submitted an affidavit by Nancy Trusty, a co-worker of Ms. Yasmeen's, claiming that Mr. Travis Hunter, Ms. Yasmeen's supervisor, told Ms. Trusty that he wanted "to get rid" of Ms. Yasmeen. Ms. Yasmeen claims that the content of this affidavit is evidence that she was terminated in retaliation for taking FMLA leave. However, since this affidavit consists of inadmissible hearsay, the court will not consider it as evidence for establishing pretext. *See Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995) (Rule 56 precludes the use of inadmissible hearsay submitted in opposition to summary judgment).

According to her amended complaint, Ms. Yasmeen also alleges Hospira contacted her husband's doctor and failed to give her an opportunity to obtain a second opinion on the FMLA certification form, both in retaliation for taking her FMLA leave.  However, even assuming Hospira's actions may have violated the FMLA, they are not evidence of retaliation.  In fact, Ms. Newman's contact with Dr. Vargo's office to inquire about the date changes supports Hospira's proffered reason for terminating Ms. Yasmeen.  After all, the contact could have just as well resulted in information that the form had been properly changed by Ms. Yasmeen's health providers.  Furthermore, Hospira was not required to give Ms. Yasmeen an opportunity to obtain a second opinion, and its failure to do so is not evidence of retaliatory animus.

Consequently, none of the evidence cited by Ms. Yasmeen demonstrates that Hospira's proffered reason for her termination "'[is] so weak, implausible, inconsistent, incoherent, or contradictory as to support a reasonable inference that [Hospira] did not act for those reasons.'"[37]  Accordingly, this court concludes that Ms. Yasmeen has failed to meet her burden of demonstrating pretext.  Because this court is granting Hospira's motion to summary judgment on Ms. Yasmeen's retaliation claim, the court dismisses Ms. Yasmeen's complaint against the individually named defendants, Ms. Newman and Ms. Chicola, on the retaliation claim as well.

2. *Title VII*

Turning next to Ms. Yasmeen's claim under Title VII for alleged religious and national origin discrimination, Hospira contends it is barred by her failure to exhaust her administrative remedies, a jurisdictional prerequisite to suit under Title VII.[38]  However, Ms. Yasmeen's amended complaint specifically pleaded that she exhausted her administrative remedies.

---

[37] *Campbell*, 478 F.3d at 1291 (citation omitted).

[38] *See, e.g.*, *Woodman v. Runyon*, 132 F.3d 1330, 1341 (10th Cir. 1997).

Additionally, Ms. Yasmeen has attached a right-to-sue letter. The complaint and right-to-sue letter filed in this action provide a sufficient basis for this court to conclude that Ms. Yasmeen exhausted her administrative remedies, and that it has jurisdiction to proceed on the merits of Hospira's motion for summary judgment.

Turning to the merits of this claim, discrimination claims under Title VII of the Civil Rights Act of 1964 are also subject to the burden-shifting analysis under *McDonnell-Douglas*. Under this analysis, Ms. Yasmeen must first establish a prima facie case of retaliation. To state a prima facie case of retaliation, Ms. Yasmeen must show that (1) that she is a member of a protected class; (2) that she was qualified and performed her job satisfactorily; (3) that despite being qualified, she was terminated; and (4) that the job from which she was terminated was not eliminated.[39] Once Ms. Yasmeen establishes her prima facie case, "[t]he burden then must shift to [Hospira] to articulate some legitimate, nondiscriminatory reason" for its employment action.[40] The burden then shifts back to Ms. Yasmeen to demonstrate that the proffered reason is pretextual.[41]

In this case, Hospira acknowledges that Ms. Yasmeen has established her prima facie case of illegal discrimination. Also, as indicated above, Hospira has proffered a legitimate, non-discriminatory reason for terminating Ms. Yasmeen. Therefore, the court is left to determine whether the proffered reason is pretext for intentional religious or national origin discrimination.

---

[39] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[40] *Id*. (citing *McDonnell Douglas*, 411 U.S. at 802).

[41] *Id*. (citing *McDonnell Douglas*, 411 U.S. at 804).

The court finds that Ms. Yasmeen has presented no evidence that Hospira's reason for her termination was pretextual.

Ms. Yasmeen can show pretext by revealing "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Hospira's] proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence.'"[42] In general, pretext may be shown with evidence that (1) the defendant's "'stated reason for the adverse employment action was false,'" (2) the defendant "'acted contrary to a written company policy,'" or (3) the defendant treated the plaintiff "'differently from other similarly-situated employees who violated work rules of comparable seriousness.'"[43] In making the pretext determination, the court views the facts "'as they appear[ed] to the person making the decision to terminate'" the employee.[44] That the employer was mistaken about the facts does not make the decision pretextual.[45]

Ms. Yasmeen primarily contends that Mr. Hunter's comments on the "prayer schedule" that he generated during her suspension is proof of illegal discrimination. Mr. Hunter's document, however, was not limited to Ms. Yasmeen's "prayer schedule," but also lists violations and other concerns of Mr. Hunter's regarding Ms. Yasmeen's employment. The document asserts that Ms. Yasmeen's prayer schedule was initially "set around her breaks and adjusted only when rotating into new assignments. It now appears the schedule is based on

---

[42] *Green v. New Mexico*, 420 F.3d 1189, 1192-93 (10th Cir. 2005) (citation omitted).

[43] *Slaguero v. Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (quoting *Kendrick*, 220 F.3d at 1230).

[44] *Id*. (quoting *Kendrick*, 220 F.3d at 1231).

[45] *See id*.

convenience."[46] According to the document, Ms. Yasmeen was not at her workstation when needed because she was elsewhere praying. The document further states that Ms. Yasmeen "has been counseled as to the affect of communication to her leaving so other inspectors may provide coverage."[47] Although Ms. Yasmeen views this document as an attack on her religious beliefs, nothing in Title VII prevents an employer from ensuring good communication with co-workers. Indeed, if anything, the document evidences an attempt to accommodate Ms. Yasmeen's religious beliefs — seeking to ensure adequate coverage for her absences. More important, the document does not show that Hospira's proffered reason is a pretext for religious discrimination as the document was generated after Ms. Yasmeen was placed on paid suspension for allegedly falsifying the FMLA certification form.

     Ms. Yasmeen claims that there are other times when Hospira treated her differently than her co-workers because she is a practicing Muslim. For instance, Ms. Yasmeen alleges in her amended complaint that Mr. Hunter told her that he was supposed to watch and make sure she did not pray on company time. However, Ms. Yasmeen has not produced any evidence that Mr. Hunter actually made these statements, or that such statements were made in his capacity as an agent of Hospira. Ms. Yasmeen also states that for most of her employment, Hospira let her use a closet in which to pray, but that when it was locked, she had to find somewhere else to pray. Yet Ms. Yasmeen has not presented any evidence suggesting that the door was locked because of discriminatory animus. Finally, in her amended complaint and elsewhere, Ms. Yasmeen generally alleges that Hospira or its agents took other discriminatory actions against her, but she does not mention, address, or further support these allegations in her response to Hospira's

---

[46] Mem. Opp'n Defs.' Mot. Summ. J. Ex. "E" (Docket No. 36-5).

[47] Mem. Opp'n Defs.' Mot. Summ. J. Ex. "E" (Docket No. 36-5).

motion for summary judgment. Without some explanation for how she reached these conclusions, bald assertions cannot create an issue of fact precluding summary judgment.

Ms. Yasmeen also alleges that a warning she received constituted a form of discrimination. The written warning indicates that on August 10, 2000 — almost four years before her discharge — an incident report was issued by the safety engineer because Ms. Yasmeen left her lunch box in the hallway unsupervised. Ms. Yasmeen was counseled about proper procedure for lunch-box storage and was also informed that her action violated company policy. The final written warning was issued after "repeated and failed attempts" by the security department to get Ms. Yasmeen to properly secure her lunch box. Ms. Yasmeen has not shown any evidence that this warning was issued based on discriminatory animus, or that in issuing the warning her supervisor was treating her differently from her co-workers who violated company policies of comparable seriousness.

In short, the circumstantial evidence Ms. Yasmeen presents is not "sufficient evidence [of pretext for discrimination] that would require submission of the case to a jury."[48] Her allegations are generally unsupported and do not create genuine issues of material fact. Furthermore, a reasonable jury could not conclude that they show that Hospira's proffered reason for her termination was pretext for religious or national origin discrimination, especially in light of the seriousness of the proffered reason. As it appeared to Hospira when it put Ms. Yasmeen on paid suspension, submitting falsified documents was serious enough to merit termination. Even if Hospira was mistaken about whether Ms. Yasmeen falsified the documents, she submitted what appeared to be falsified documents and, in so doing, broke the trust that

---

[48] *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1379 (10th Cir. 1994).

exists between employers and their employees. This court finds that a reasonable jury could not determine that Hospira's proffered reason was pretext for religious discrimination, and therefore grants Hospira's motion for summary judgment on Ms. Yasmeen's Title VII claim.

      3.  *Intentional Infliction of Emotional Distress*

A claim of international infliction of emotional distress is barred by the Utah Worker's Compensation Act unless Ms. Yasmeen can prove that Hospira had a "conscious and deliberate intent directed to the purpose of inflicting an injury."[49] Ms. Yasmeen bases her evidence for this claim on Ms. Trusty's affidavit, which states that Ms. Yasmeen's supervisor, Mr. Hunter, expressed a desire to "get rid of" her. Because this evidence is inadmissible hearsay, however, it cannot be considered by the court.[50] Ms. Yasmeen also contends that Mr. Hunter's document discussing Ms. Yasmeen's prayer schedule is evidence of a deliberate intent to inflict injury. But nowhere does she explain or prove how such is the case. Mere allegations and unsupported conclusions are insufficient to withstand summary judgment.[51] Therefore, this court grants summary judgment to Hospira on Ms. Yasmeen's claim of intentional infliction of emotional distress and, accordingly, denies Ms. Yasmeen's request that she be allowed to amend her complaint to allege the same claim against Mr. Hunter.

Ms. Yasmeen's request to amend her complaint to allege an intentional infliction of emotion distress claim against Mr. Hunter is also not timely as the deadline for amending

---

[49] *Lantz v. Nat'l Semiconductor Corp.*, 775 P.2d 937, 939 (Ut. Ct. App. 1989).

[50] *See Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995) (Rule 56 precludes the use of inadmissible hearsay submitted in opposition to summary judgment).

[51] *Thomas v. Nat'l Semiconductor, Inc.*, 827 F. Supp. 1550, 1553 (D. Utah 1993).

pleadings and adding new parties was December 15, 2006, and both parties have filed summary judgment motions. Therefore, Ms. Yasmeen's request is rejected for this reason as well.

## CONCLUSION

The court hereby GRANTS Hospira's motion for summary judgment [#30] and DENIES Ms. Yasmeen's cross motion for summary judgment [#32]. Accordingly, Ms. Yasmeen's claims are DISMISSED, and the Clerk's Office is directed to close the case.

SO ORDERED.

DATED this 2nd day of November, 2007.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge